In the Supreme Court of Georgia

Decided:       September 14, 2015

S15A0884.  GONZALEZ v. HART, WARDEN.

HINES, Presiding Justice.

This Court granted prisoner Arquimides Gonzalez's application for a certificate of probable cause to appeal the denial of his petition for a writ of habeas corpus, posing the single question of whether the habeas court correctly applied this Court's decision in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008).  For the reasons which follow, we reverse the judgment of the habeas court and remand.

In 2007, a jury found Gonzalez guilty of family violence battery,[1] two counts of aggravated assault, kidnapping with bodily injury, and two counts of aggravated battery in connection with two incidents involving his ex-girlfriend. He was sentenced to life in prison for the kidnapping with bodily injury; 20 years in prison for each aggravated assault and each aggravated battery, to be

---

[1] Gonzalez was indicted for aggravated assault in this count, but the jury found him guilty of the lesser offense of family violence battery.

served consecutively to each other and to the life sentence; and 12 months in prison for family violence battery, to be served consecutively to all other sentences, for an aggregate sentence of life plus 81 years in prison. On motion for new trial, Gonzalez successfully argued to the trial court that one of the counts of aggravated assault should have merged with a count of aggravated battery for the purpose of sentencing, so even though the motion for new trial was denied on other grounds, on July 2, 2008, these counts were merged and he was re-sentenced for an aggregate sentence of life plus 61 years in prison. On direct appeal to the Court of Appeals, Gonzalez contended that the trial court erred in refusing to merge the two aggravated battery counts for the purpose of sentencing and that trial counsel was ineffective for failing to request a jury charge on false imprisonment as a lesser included offense of the kidnapping with bodily injury charge. On July 9, 2009, the Court of Appeals decided the direct appeal, and determined that the two counts of aggravated battery merged, vacated the sentence on the second such count, and remanded the case for re-sentencing; it rejected the claim of ineffective assistance of trial counsel and affirmed Gonzalez's remaining convictions and sentences. *Gonzalez v. State*, 298 Ga. App. 821 (681 SE2d 248) (2009). On remand, on October 1, 2009,

2

Gonzalez was again re-sentenced for an aggregate sentence of life plus 41 years in prison.

On May 24, 2010, Gonzalez filed a pro se petition for a writ of habeas corpus raising three grounds: (1) ineffective assistance of trial counsel for failing to request a jury charge on false imprisonment as a lesser-included offense of kidnapping with bodily injury and for mentioning his immigration status to the jury; (2) ineffective assistance of appellate counsel for failing to raise insufficiency of the evidence regarding the kidnapping with bodily injury charge under *Garza*; and (3) cruel and unusual punishment in the imposition of a life sentence for the kidnapping with bodily injury inasmuch as the evidence viewed in light of *Garza* would not support the conviction. Following an evidentiary hearing, at which Gonzalez's former appellate counsel testified, on August 7, 2014, the habeas court issued its order denying habeas relief. In so doing, it determined, inter alia,[2] that under *Garza* there was sufficient evidence to establish that Gonzalez committed the charged offense of kidnapping with bodily injury beyond a reasonable doubt, including the element of asportation,

_____

[2]Gonzalez's remaining claims which were ruled upon adversely to him are outside the confines of this granted application for a certificate of probable cause to appeal.

3

and consequently, it rejected Gonzalez's claim that his appellate counsel was ineffective for failing to raise on appeal insufficiency of the evidence of kidnapping in light of *Garza*. However, the habeas court's determination in this regard was in error.

In *Garza*, this Court established new factors for assessing the asportation element of Georgia's pre–2009 kidnapping statute[3]; the movement required to establish asportation had to be more than "merely incidental" to other criminal activity, and four judicially - created factors were to be considered before a court could reach the conclusion that more than "merely incidental" movement had occurred. Id. at 702(1). *Sellars v. Evans*, 293 Ga. 346, 347 n.1 (745 SE2d 643) (2013). The four factors to be considered are: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to

---

[3]*Garza* has been superceded by statute for offenses occurring after July 1, 2009. OCGA § 16–5–40 (b) (2). However, as *Garza* constituted a substantive change in the law with respect to the elements of kidnapping at the time that the case was decided, the rule stated therein became retroactively applicable to this case, because the time to enumerate errors on direct appeal had passed before *Garza* was decided and the Court of Appeals denied Gonzalez's motion to amend his brief to raise a new claim based on *Garza*. *Sellars v. Evans*, 293 Ga. 346, 347 n. 1 (745 SE2d 643) (2013).

the victim independent of the danger posed by the separate offense. *Upton v. Hardeman*, 291 Ga. 720, 721 (732 SE2d 425) (2012). However, in general it is not necessary that all four factors be met in order to establish asportation. *Wilkerson v. Hart*, 294 Ga. 605, 608 (3) (755 SE2d 192) (2014). What must be kept in mind is the purpose of the *Garza* test, which is to determine whether the movement in question served to substantially isolate the victim from protection or rescue, the evil which the kidnapping statute was originally intended to address. *Levin v. Morales*, 295 Ga. 781, 782-783 (764 SE2d 145) (2014).

As noted, the charges against Gonzalez stemmed from two incidents of violent behavior involving his ex-girlfriend ("victim"). The first incident occurred in the victim's apartment on April 9, 2005, and resulted in Gonzalez's convictions and remaining sentences for family violence battery, aggravated assault, and kidnapping with bodily injury; the second incident was Gonzalez pushing the victim out of a moving car on June 4, 2005, resulting in his remaining conviction and sentence for aggravated battery.

The kidnapping with bodily injury charge in the indictment alleged that Gonzalez did "unlawfully abduct [the victim], a human being, without lawful authority and hold said person against her will, and said person did receive

5

bodily injury, to wit: bruising." The habeas court detailed the evidence with regard to the incident in the victim's apartment giving rise to the kidnapping charge: the victim had been in a relationship with Gonzalez, and the relationship changed when he became very jealous; after an incident in which Gonzalez hit her, the victim moved out of the home they shared; after that, Gonzalez went to the apartment that the victim was sharing with a co-worker; a male friend of the victim had visited her that day and left his shirt, which was hanging in the apartment; the presence of the shirt precipitated an argument between Gonzalez and the victim; while in the bedroom, Gonzalez began hitting the victim in the face; he threw her onto the bed, where he choked her around the neck; the victim did not recall whether Gonzalez hit her with an open hand or with a fist, but thought he used his fist because of the bruises she received; Gonzalez and the victim struggled, and she got out of the bedroom; the victim told Gonzalez that she was going to call the police, and he grabbed her cell phone; the victim was moving towards the door of the apartment when Gonzalez reached her, grabbed her by the hair, and then threw her against the wall or door; and Gonzalez then left, taking her cell phone.

In regard to the element of asportation, the habeas court focused on the act

6

of Gonzalez grabbing the victim by the hair and pulling her back from the door, and concluded that although the duration of that movement was short, it presented a significant danger to the victim independent of the charged offenses of aggravated assault resulting from the apartment incident.[4]  It also concluded that the movement of pulling the victim back by the hair allowed Gonzalez to exercise additional control over her, throw her into the wall or door, and further isolate her from protection or rescue, as it served to terminate her attempt to flee the apartment and Gonzalez.   However, the habeas court misapplied *Garza* in reaching such conclusions.

First, there is no evidence to support a finding that the movement of pulling the victim back by the hair was anything other than of minimal duration. After the bedroom altercation and Gonzalez's taking the victim's cell phone, she went towards the door,  Gonzalez caught up to her, grabbed her hair, and threw her against the door or wall.  Gonzalez then immediately left the apartment. Thus the act was part and parcel of one violent event.  Indeed, such movement

---

[4]The first offense of aggravated assault, upon which Gonzalez was found guilty of family violence battery, charged that it was committed by Gonzalez throwing the victim against a wall; the second offense of aggravated assault charged that Gonzalez assaulted the victim by squeezing her neck with his hands.

occurred during the commission of, and as an inherent part of, the first indicted aggravated assault, and the resulting conviction of family violence battery. The alleged kidnapping, i.e., the grabbing of the victim's hair, is inseparable from the family violence battery of throwing the victim against the wall as that is how Gonzalez accomplished such criminal act. Separating Gonzalez's grabbing the victim's hair from his act of throwing the victim against the wall or door, and labeling it kidnapping starkly illustrates both cumulative punishment under more than one criminal statute for a single course of conduct and the failure to provide fair warning of what type of conduct the kidnapping statute forbids. *Garza* at 700 (1).

Furthermore, there is no evidence that pulling the victim by the hair presented a significant danger to her that was independent of the family violence battery, as she was not isolated or somehow exposed to an independent danger outside of the one to which she was already being subjected from the family violence battery itself. *Sellars v. Evans*, supra at 348 (1). The family violence battery and alleged kidnapping with bodily injury were one continuous event. The habeas court held that the hair grabbing presented an independent danger to the victim by isolating her and preventing her rescue; but, the court failed to

recognize that Gonzalez immediately left the apartment without returning or instructing the victim to stay in the apartment. Thus, right after Gonzalez grabbed the victim's hair, the attack on her stopped and she was out of danger.

Accordingly, under *Garza*, the evidence was insufficient to show the necessary kidnapping element of asportation. Consequently, the judgment of the habeas court must be reversed, and Gonzalez's conviction for kidnapping with bodily injury and the life sentence must be vacated.[5]

Judgment reversed and case remanded with direction. All the Justices concur.

---

[5]It must be noted that in the governing amended sentencing order of October 1, 2009, the sentences for the remaining convictions were to be served consecutively to each other and to the life sentence for kidnapping with bodily injury; therefore, these remaining sentences will need to be re-crafted in light of the vacating of the life sentence.